IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.                                                           Civil Action No. 1:21-MC-25
                                                               (JUDGE KEELEY)

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**AND BRIAN BOUCHER,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART UNDER ARMOUR'S AND NICOLE FINCK'S MOTION [ECF NO. 1] TO QUASH

This matter, a discovery dispute, relates to an underlying civil matter pending in this Court bearing Case No. 1:19-CV-160. The instant matter originally was pending in the United States District Court for the District of Maryland, Northern Division. By order dated May 14, 2021, United States District Judge Deborah K. Chasanow referred the matter to Magistrate Judge Deborah L. Boardman. [ECF No. 2]. Then, by order dated June 8, 2021, Magistrate Judge Boardman transferred the matter to this District. [ECF No. 5]. Thereafter, by order dated June 15, 2021, Senior United States District Judge Irene M. Keeley referred the matter to the undersigned Magistrate Judge. [ECF No. 8].

While the matter was pending in the United States District Court for the District of Maryland, the matter was fully briefed. Thus, presently pending before the Court is Defendants Under Armour, Inc. and Under Armour Retail, Inc.'s ("Under Armour") and Non-Party Nicole Finck's ("Finck") Motion to Quash Subpoena on Ms. Finck and for Protective Order [ECF No. 1], filed on May 7, 2021. The Court is in receipt of the memorandum of support, thereof, [ECF No.

1-1], filed on even date therewith. Also, the Court is in receipt of Plaintiff's response in opposition, thereto, [ECF No. 3], filed on May 21, 2021. Finally, the Court is in receipt of Under Armour's reply [ECF No. 4] in support of its motion, filed on June 4, 2021. On June 30, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion, and took the parties' arguments under advisement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By Order of March 8, 2021, Judge Keeley allowed Plaintiff to amend her Complaint in the underlying matter to add claims for intentional spoliation, and permitted further limited discovery on those claims. [ECF No. 292 in Case No. 1:19-CV-160]. Thereafter, in pursuit of the spoliation claim, Plaintiff (1) served a subpoena duces tecum on Finck, and (2) noticed a deposition of Finck. [See ECF Nos. 1-4 at 19 and 1-5 at 1.] Notably, Finck is employed as a paralegal in Under Armour's in-house legal department and works on the underlying matter.

By the subpoena duces tecum of Finck, Plaintiff seeks:

1. Documents related to Finck's involvement in a panel presentation at a conference called "Relativity Fest 2019"[1]; the conference, held October 20-23, 2019, concerned e-discovery management and practices, and the panel presentation concerned an e-discovery platform called "Relativity." Plaintiff alleges (and Under Armour disputes) that Finck made statements during her presentation at Relativity Fest about (a) problems with a prior e-discovery platform which Under Armour utilized, and (b) a practice at Under Armour to encourage employees to delete text messages.
2. All documents related to Finck's efforts to locate anything responsive to Plaintiff's discovery requests in the underlying matter.
3. Any documents related to Finck's knowledge of destruction, spoliation, and non-retention of any documents/information responsive to Plaintiff's discovery requests in the underlying matter.
4. A copy of Finck's CV/resume.

In its pending motion to quash, Under Armour challenges both the subpoena duces tecum and the deposition of Finck. Principally, Under Armour objects to these discovery requests as

---

[1] At the June 30, 2021 hearing, Under Armour's counsel informed the Court that Under Armour is not aware of any recordings of this presentation.

necessarily encompassing material and information protected by the attorney-client privilege and/or the work product doctrine. Plaintiff, on the other hand, argues that the crime-fraud exception applies here such that she should be able to obtain information which otherwise is privileged and confidential, and that in any event, as to work product, she should be able to obtain it because she has shown "substantial need." The parties also argue about whether Under Armour has waived privilege here because it did not initially produce a privilege log. Further, the parties argue about whether Plaintiff waited too long to seek discovery as to Finck, having learned of Finck's alleged statements in late 2019 but not disclosing her as a witness in the underlying matter until February 10, 2021.

At the hearing before the undersigned on June 30, 2021, the Court directed Under Armour's counsel to provide certain materials for in camera review. The undersigned received these materials on July 2, 2021 and reviewed them. The materials consist of: (1) documents concerning Relativity Fest which Under Armour claims are attorney-client privileged, including one redacted document previously produced to Plaintiff and an un-redacted version for in camera review only[2], (2) privilege logs and one supplemental disclosure, previously generated by Under Armour and provided to Plaintiff, concerning the Relativity Fest documents[3], and (3) documentation about the

---

[2] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. The bulk of the materials claimed to be attorney-client communications are lodged as a single .pdf file and Bates numbered as "UAPrivileged." [ECF No. 18] Separately lodged as a single .pdf file is a privileged communication, Bates number UAPrivileged001446 and UAPrivileged001447. These are duplicates of communications previously included in a privilege log but Under Armour says the duplicates inadvertently were omitted from the privilege log and were later included in an amended privilege log. [ECF No. 18-1]. Finally, the one redacted document previously produced to Plaintiff and an un-redacted version for in camera review are lodged as a single .pdf file, the un-redacted page lacking a Bates number and the redacted page bearing Bates number UnderArmour007121. [ECF No. 18-2].

[3] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. These privilege logs and the supplemental disclosure themselves are not confidential, and have been provided to Plaintiff, but nonetheless are restricted on the CM/ECF system out of an abundance of caution. They consist of: Privilege Log Pursuant to Court's Order of May 21, 2021 [ECF No. 19]; Defendant's Amended Privilege Log as of June 11, 2021 [ECF No. 19-1]; Second Amended Privilege Log (Provided July 1, 2021) [ECF No. 19-2]; and Under Armour's First Supplemental Response to Plaintiff's First Set of

lapse of time between Plaintiff learning of Finck's alleged statements at Relativity Fest 2019 and the date (February 10, 2021) when Plaintiff named Finck as a witness[4].

## II. ISSUES, ANALYSIS, AND DISPOSITION

The undersigned addresses, in turn, the following issues: (1) whether the materials and information at issue are, in the ordinary course, protected by the attorney-client privilege and the work product doctrine, including whether "substantial need" exists to compel disclosure of work product, and to the extent they may not be, what areas of inquiry are permissible in a deposition of Finck,[5] (2) whether the crime-fraud exception applies to compel disclosure of otherwise privileged and confidential information, and (3) whether Under Armour waived privilege by not initially providing a privilege log.

---

Requests for Production of Documents Related to Her Spoliation Claims, dated June 11, 2021. [ECF No. 19-2].

[4] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. These materials are not confidential, and appear to consist of materials exchanged between the parties, but nonetheless are restricted on the CM/ECF system out of an abundance of caution. They consist of: Plaintiff's Second Supplemental Rule 26(a)(1) Initial Disclosures, dated February 10, 2021 [ECF No. 20]; Plaintiff's Rule 26(a)(1) Initial Fact Witness Disclosures Regarding Plaintiff's Spoliation Claims, dated April 28, 2021 [ECF No. 20-1]; Plaintiff's Supplemental Rule 26(a)(1) Fact Witness Disclosures Regarding Plaintiff's Spoliation Claims, dated June 17, 2021 [ECF No. 20-2]; a single-page printout of an email concerning transmission of minutes of a meeting held by the Steptoe and Johnson law firm, Bates number FRYE0044 [ECF No. 20-3]; minutes (redacted) of the aforementioned meeting, Bates numbers FRYE0045, FRYE0046, FRYE0280, and FRYE0281 [ECF No. 20-4]; a 17-page privilege log of internal emails at the Steptoe and Johnson law firm concerning Relativity Fest, lacking Bates numbers [ECF No. 20-5]; and correspondence dated December 30, 2019 from Allison B. Williams, Plaintiff's counsel, to Justin B. Harrison, Under Armour's counsel, concerning discovery issues. [ECF No. 20-6].

[5] As to a deposition of Finck, it appears that Plaintiff wishes to inquire not just about Finck's involvement at Relativity Fest 2019 but also about Under Armour's retention of information and materials otherwise. At the hearing before the undersigned on June 30, 2021, the Court discussed with the parties' counsel the potential of a different witness being made available by Under Armour, under Fed. R. Civ. P. 30(b)(6), to testify as to retention of materials and information.

Counsel pointed out that Plaintiff since has noticed the deposition of such a Rule 30(b)(6) witness, and Under Armour has filed a motion for a protective order. The matter is fully briefed. [See ECF Nos. 430, 448, and 460 in Case No. 1:19-CV-160.] The motion has not been referred to the undersigned. In fact, it is the subject of a hearing set before Judge Keeley on August 10, 2021. [See ECF Nos. 453, 465 in Case No. 1:19-CV-160.] Accordingly, the undersigned does not further address here the issue of such a Rule 30(b)(6) witness.

## A. Pertinent Law and Standards

Under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Significantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id</u>.

Certainly, where privileged information is sought, discovery is not so readily had. Much of the resolution here turns on the application of the attorney-client privilege and work product doctrine. The undersigned recognizes that, in civil actions such as this one where the Court's jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of the attorney-client privilege. <u>Nicholas v. Bituminous Cas. Corp</u>., 235 F.R.D. 325, 329 n. 2 (N.D.W.V. 2006).

As for the attorney-client privilege, the Supreme Court of the United States has explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981) (citation omitted). Moreover, under West Virginia caselaw:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

5

State ex rel. U.S. Fid. & Guar. Co. v. Canady, 194 W. Va. 431, 442, 460 S.E.2d 677, 688 (1995) (quoting Syl. Pt. 2, State v. Burton, 163 W. Va. 40, 254 S.E.2 129 (1979)).

Similarly, the work product doctrine of course is long embedded in our jurisprudence. "[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded . . ." In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981).

When the instant matter was pending in the United States District Court for the District of Maryland, the parties briefed the issues. In so doing, the parties argued as to whether Under Armour should have sought relief there under Rule 26 or Rule 45 of the Federal Rules of Civil Procedure, and whether it should have been sought in this Court or in the District of Maryland. As the subpoenas are directed at Finck, a nonparty in the underlying litigation, Plaintiff argued about the appropriate mechanism for Under Armour to object to disclosure of information in which it had an interest. Under Fed. R. Civ. P. 45(d)(3)(A)(ii), relief is to be sought in "the court for the district where compliance is required," i.e. the District of Maryland, where Finck is based with Under Armour. Under Fed. R. Civ. P. 26(c)(1), relief may be sought "in the court where the action is pending," i.e. the Northern District of West Virginia. It appears that under either rule, the standard for determining what is discoverable is identical. But more importantly, the parties consented to transfer of the matter to this Court. [See ECF Nos. 3 and 4.] As such, the question is moot and requires no further discussion.

## B. Applicability of Attorney-Client Privilege and Work Product Doctrine, Whether "Substantial Need" Otherwise Exists to Obtain Work Product, and Scope of Deposition of Finck

As an initial matter, the Court must determine whether there indeed are materials and/or information sought here from Finck which are, absent some exception, protected from disclosure by operation of the attorney-client privilege and/or the work product doctrine.

To recap, by the subpoena duces tecum, Plaintiff seeks from Finck discrete categories of information (which, presumably, also would be Plaintiff's desired areas of inquiry in a deposition of Finck). Those categories are: (1) documents related to Finck's panel discussion at Relativity Fest 2019, (2) documents about her involvement in responding to Plaintiff's discovery requests and about Under Armour's retention of information and materials, and (3) a copy of Finck's CV/resume. The undersigned takes up, in turn, the necessary areas of analysis as delineated below.

*1. Panel Discussion at Relativity Fest 2019*

At the hearing before the undersigned on June 30, 2021, Under Armour's counsel indicated that Plaintiff has been provided certain materials pertaining to Relativity Fest 2019 which Under Armour considers to be non-privileged. Yet, Under Armour's counsel was clear that Under Armour is withholding other materials which it asserts are privileged and/or confidential. And Plaintiff's counsel indicated that Plaintiff intends to seek information from Finck about Relativity Fest 2019 regardless of the assertion of privilege. Further, in the undersigned's in camera review of documents provided by Under Armour, it is clear that these materials are privileged and confidential and ordinarily would not be subject to disclosure through discovery.

Relatedly, Under Armour argues that Plaintiff's seeking of these materials simply is too late and does not comport with Judge Keeley's order [ECF No. 292 in Case No. 1:19-CV-160] allowing for further limited discovery concerning Plaintiff's claims for intentional spoliation. In

support of this argument, Under Armour points out that Plaintiff (or, more to the point, the firm representing her) knew of Fink's alleged statements at Relativity Fest at the time of the conference held October 20-23, 2019. And, Under Armour points out how these alleged statements by Fink were the subject of discussion during an internal meeting on November 12, 2019 of the law firm representing Plaintiff.[6] Yet, Plaintiff did not name Finck as a potential witness until February 10, 2021. [See ECF No. 1-4 at 25].

The undersigned is persuaded, though, by Plaintiff's argument that the bearing which such alleged statements may have on this case were not necessarily evident until later in these proceedings. After all, Plaintiff did not raise the spoliation claims until February 18, 2021 and was permitted at that time to pursue them. There is no indication that defendants' arguments about untimeliness of the spoliation claims were successful before Judge Keeley. The disclosure of Finck as a potential witness and Plaintiff's motion to amend the complaint to add spoliation claims occurred only within days of each other. In other words, the disclosure of Finck as a witness corresponds to the timeframe in which Plaintiff sought, successfully, to lodge the spoliation claims. Thus, Under Armour's argument about Finck being disclosed too late is unavailing here.

In sum, the undersigned **FINDS** that the remaining materials in dispute as to Relativity Fest 2019, produced for in camera review, are protected by the attorney-client privilege and/or work product doctrine. As such, the undersigned further **FINDS** that they need not be disclosed to Plaintiff absent some exception to these protections. The undersigned makes such further analysis

---

[6] Under Armour highlights the fact that Finck's alleged statements surfaced as part of seemingly unrelated internal operations of the law firm representing Plaintiff. It appears that an attorney with the firm representing Plaintiff attended the panel discussion at which Finck presented. At the hearing before the undersigned, Plaintiff's counsel did not offer any statements from attendees other than that of the attorney with the law firm representing Plaintiff. While such involvement of a party's law firm and discovery of certain information of its internal operations is unusual, the undersigned does not, absent more, perceive the need to weigh into the matter further at this time.

below as to exception to these protections and whether privilege applies to preclude their disclosure. However, as to non-privileged information/communications and non-confidential materials pertaining to Relativity Fest 2019 (which Under Armour represents it has provided to Plaintiff already), the undersigned **FINDS** that Plaintiff may depose Finck regarding statements Finck made at Relativity Fest 2019. After all, Relativity Fest 2019 involved a panel discussion at a conference open to the public, clearly in a forum where privileged and confidential communications and materials were not, in that setting, being generated. Such deposition, however, may not probe attorney-client communications or materials protected by the work product doctrine otherwise generated as part of Finck's panel discussion at Relativity Fest.

As a related matter, at the June 30, 2021 hearing, Under Armour's counsel distinguished between information and materials generated prior to February 10, 2021, when Plaintiff designated Finck as a potential witness, and those generated after that date. By this Order, the undersigned analyzes only information and materials generated prior to that date. Privileged information generated on or after that date clearly is of a different nature, and more voluminous, as Plaintiff then named Finck as a potential witness. To the extent which Plaintiff seeks privileged and/or confidential information here generated on or after February 10, 2021, the undersigned **FINDS** that Plaintiff is not entitled to seek it.

On another note, at the hearing before the undersigned, there was argument about how Finck's presentation at Relativity Fest 2019 involved, in part, discussion about problems with an e-discovery platform formerly in use by Under Armour. Under Armour states that the former platform was not in use during the time of litigation involving Plaintiff. Under Armour also has clarified for the undersigned's chambers that it discontinued use of the former platform on August 13, 2018. [See ECF No. 2 at 3]. Only well after that date, on February 15, 2019, did Plaintiff's

counsel correspond with Under Armour to assert a "litigation hold." [See ECF No. 231-1 in Case No. 1:19-CV-160.] Plaintiff initiated the underlying action on July 16, 2019 in the Circuit Court of Harrison County, West Virginia. [See ECF No 1-1 in Case No. 1:19-cv-160]. Thus, nothing about Under Armour's prior former platform appears to be germane to Plaintiff's claims for intentional spoliation. Therefore, the undersigned **FINDS** that Plaintiff is not entitled to depose or otherwise seek discovery from Finck about this issue regarding the former e-discovery platform.

Accordingly, as to information concerning Relativity Fest 2019, Under Armour's motion is **GRANTED in part** and **DENIED in part** as set forth here.

*2. Finck's Involvement in Responding to Plaintiff's Discovery Requests Otherwise*

Plaintiff seeks not just information about Finck's presentation at Relativity Fest 2019, but also a broader category of information relating to her involvement in responding to Plaintiff's discovery requests in the underlying action. Plaintiff also seeks from Finck information about Under Armour's retention of information and materials.

Clearly, these inquiries are of a different nature than those pertaining to Relativity Fest 2019. Finck is part of Under Armour's in-house legal department, and has been involved in the underlying litigation here. To that end, then, to seek such information implicates internal operations and processes concerning not simply litigation writ large, but also the specific litigation at issue here. What Plaintiff seeks is extraordinary, and almost certainly would entail inquiry about privileged and/or confidential information. As such, the undersigned further **FINDS** that such information need not be disclosed to Plaintiff absent some exception to these protections. The undersigned makes such further analysis below as to whether privilege applies to shield disclosure in this regard.

### 3. Finck's CV/Resume

At the hearing before the undersigned on June 30, 2021, Under Armour's counsel stated that Under Armour has provided Finck's CV/resume to Plaintiff. Thus, as to that issue, Under Armour's motion is **DENIED as moot**.

### 4. "Substantial Need" Exception to Work Product Doctrine

As to all of the materials sought here which are work product materials, Plaintiff claims that she is entitled to them because of "substantial need." Plaintiff bases this argument on the provision that documents and tangible things "prepared in anticipation of litigation or for trial by or for another party (including the other party's attorney . . .)" are not usually discoverable unless "(i) they are otherwise discoverable under Rule 26(b)(1) and (ii) the party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). In this regard, the Fourth Circuit has explained that there are two kinds of work product: (1) that which is "absolutely" immune, being "the pure work product of an attorney insofar as it involves mental impressions, conclusions, opinions, or legal theories ... concerning the litigation" and which "is immune to the same extent as an attorney-client communication" and (2) that which is "qualifiedly immune, being "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) (quotations and citations omitted).

"[O]ur adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." Id. at 983. Here, Plaintiff has left virtually no other

11

stone unturned in search of information to support her spoliation claims. The breadth of discovery undertaken here, the corresponding litigation of numerous discovery disputes, and the resources brought to bear in the process, have been exhaustive but to date has turned up little. Plaintiff has litigated discovery disputes in at least two other jurisdictions besides this one, sought information from a number of third parties, conducted forensic examinations of digital devices, and deposed an array of individuals. Thus, by seeking her opponent's work product, it is unclear what nugget of information Plaintiff believes she will turn up which is so pivotal to her claims. It is unclear what possibly could be unavailable to Plaintiff that is so necessary to set aside work product protections. In short, Plaintiff fails to demonstrate a compelling reason to pierce the work product protection.

Thus, the undersigned **FINDS** that Plaintiff may <u>not</u> obtain work product based upon substantial need. Accordingly, to the extent which Under Armour's motion seeks a protective order in spite of Plaintiff claiming "substantial need" of work product, Under Armour's motion is **GRANTED in part**.

### B. Crime-Fraud Exception

Plaintiff claims that the crime-fraud exception trumps the relevant attorney-client and work product shields in this context. However, courts are not to cast aside so cavalierly these protections.

As the Fourth Circuit has explained, "[b]oth the attorney-client and work product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." <u>In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004</u>, 401 F.3d 247, 251 (4th Cir. 2005). "The party asserting the crime-fraud exception . . . must make a prima facie showing that the privileged communications fall within the exception." <u>Id</u>. More specifically:

> [W]e have held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or

> fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.

<u>Id</u>. (citations omitted).

It has become clear to the undersigned that Plaintiff has failed to make a prima facie showing of how any defendant here involved their legal counsel in some kind of scheme to defraud, such that the crime fraud-exception applies. The most to which Plaintiff has pointed is deletion of text messages by Defendant Brian Boucher ("Boucher"). Such deletions occurred at a time unclear from the undersigned's review of the record. But in any case, nowhere in the record does Plaintiff make any kind of showing that Boucher deleted the text messages with involvement of counsel or in any way utilized a relationship with legal counsel (either in-house or outside counsel) to perpetuate some kind of fraud. In fact, Plaintiff has not shown that the deletions occurred with involvement of anyone else at all. And Plaintiff has not even shown that deleted information was germane to Plaintiff or had any bearing on the substance of the underlying matter.

The undersigned has addressed Plaintiff's argument about application of the crime-fraud exception in a related context. [<u>See</u> ECF No. 401 in Case No. 1:19-CV-160]. There, Plaintiff took issue with a declaration provided by Steven Kitchen ("Kitchen"), who is a staffer with a vendor performing IT services for Under Armour. The declaration pertains to the contents of a laptop which Boucher used while employed by Under Armour. Kitchen's declaration summarized the laptop's contents (or lack thereof). Knowing that Plaintiff would not be satisfied with any such summary provided by Under Armour, the undersigned allowed Plaintiff to utilize her own expert to examine the laptop. Plaintiff's expert summarized the laptop's contents somewhat differently,

although it is not clear what material difference there was in the respective IT professionals' summaries. In fact, counsel for the parties later requested that the undersigned resolve disputes arising during Kitchen's deposition; the undersigned thus heard Kitchen's explanations about his review of the laptop and explanation for disparities in the IT professionals' examinations.[7]

This is all to say that, in hearing extensive arguments (and undertaking extensive in camera review of voluminous materials), both in the instant matter and in the underlying litigation, the undersigned has yet to find a prima facie showing for application of the crime-fraud exception. Certainly, Under Armour's corporate operations appear to be expansive, and its accounting of materials and electronic devices was lacking, at least in part, because of a sometimes-clumsy bureaucracy. And it is not particularly surprising that Boucher, as many do in the course of separation from employment, would delete certain materials as he was leaving Under Armour (especially considering it does not appear that his departure was related to this litigation). That is not to say that Under Armour's operations were good in this context, or that Boucher's deletions were acceptable in light of the potential for pending litigation. But nothing about these circumstances points to a prima facie case for the crime-fraud exception.

In the context of the matter at bar, there simply is not sufficient demonstration by Plaintiff that a violation was ongoing or about to be committed, let alone a demonstration of a close relationship between any attorney-client contact and the spoliation activity alleged. Courts are reluctant, for good reason, to find that the crime-fraud exception applies, given the sanctity of the

---

[7] In the instant matter and in the related discovery dispute, to argue for application of the crime-fraud exception, Plaintiff relies heavily on Rambus, Inc. v. Infineon Technologies, AG, 220 F.R.D. 264 (E.D. Va. 2004). However, this authority (of course not binding on the Court here) is not particularly helpful to Plaintiff. Nothing about the Rambus decision deviates from the requirement to show utilization of the attorney-client relationship in furtherance of such alleged misconduct. And in all of the discovery disputes analyzed in the Pajak litigation, the undersigned has never found such a misuse of the attorney-client relationship.

privileges at issue. Plaintiff's allegations or suspicions do not carry the day in this analysis; there must be more specificity.

The undersigned **FINDS** that the crime-fraud exception does not apply here. Accordingly, to the extent which Under Armour seeks a protective order to shield from discovery information otherwise protected by the attorney-client privilege and work product doctrine, its motion is **GRANTED in part**.

### C. Privilege Log and the Issue of Waiver

This Court's local rules provide that, in making an objection to a discovery request on the basis of privilege, including on the basis of attorney work product, certain information must be provided in the objection. Commonly called a "privilege log," this information includes what type of document is at issue and its subject matter, as well as other identifying information. L.R. Civ. P. 26.04(a)(2)(i)(B)(1). Plaintiff argues that, in not providing a privilege log initially, Under Armour should be found to have waived its privilege here.

The undersigned declines to find that Plaintiff's desired result here is justified. There is nothing about the Local Rules which requires a finding of waiver of privilege. Here, Under Armour ultimately provided extensive, detailed privilege logs. There is nothing about this discovery dispute for which finding a waiver of privilege would further the purposes and policies behind discovery procedures set for in the Federal Rules of Civil Procedure and our Local Rules. In no way would finding a waiver of privilege in this context encourage the just, efficient and timely resolution of any aspect of this matter.

Thus, the undersigned **FINDS** that Under Armour did not waive privilege here when it did not initially produce privilege logs. Accordingly, to the extent which Under Armour seeks a

protective order to shield from discovery information otherwise identified in the privilege logs at issue here, its motion is **GRANTED in part.**

## III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Under Armour's motion [ECF No. 1] is hereby **GRANTED in part** and **DENIED in part**. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: July 12, 2021**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE